IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY P. McCULLOUGH, )<br>)<br>    Petitioner, )<br>)<br>v. )<br>)<br>)<br>COMMISSIONER, SOCIAL SECURITY )<br>ADMINISTRATION, )<br>)<br>    Respondent. )<br>_____) | Case No. CV 06-392-S-LMB<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Currently pending before the Court is Timothy P. McCullough's Petition for Review, seeking review of the Social Security Administration's decision to deny his claim for disability insurance benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**I.**

**ADMINISTRATIVE PROCEEDINGS**

Timothy P. McCullough's ("Petitioner") application for disability insurance benefits, alleging disability beginning February 28, 2002, was denied initially and on reconsideration. (AR 39-48). Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 49). ALJ Hayward C. Reed held a hearing on January 27, 2006 at which time

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner and vocational expert, Polly A. Peterson, appeared and testified.  (AR 600-658).  Petitioner was represented by attorney Hugh Mossman.

On May 9, 2006, the ALJ issued a decision denying Petitioner's claim (AR 12-21).  Specifically, the ALJ found that Petitioner was not under a "disability" within the meaning of the Social Security Act.  (AR 21).  Petitioner timely requested review by the Appeals Council on May 31, 2006.  (AR 446).  On August 17, 2006, the Appeals Council denied Petitioner's Request for Review of Hearing Decision/Order (AR 6-8), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action.  The underlying issue is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Related to this issue, Petitioner disagrees with the ALJ's: (1) evaluation of Barbara E. Quattrone, M.D.'s, medical opinions; (2) evaluation of Petitioner's own testimony; and (3) reliance on the vocational expert's testimony in response to hypothetical questions.  Pet.'s Brief in Supp. of Pet. for Review, pp. 7-17 (Docket No. 8).  Petitioner therefore requests that the ALJ's decision be reversed and/or remanded to allow the ALJ an opportunity to further evaluate the evidence.

## II.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920 (2005).  The second part of that process involves a determination

regarding whether the claimant has a "severe impairment." 20 C.F.R. § 416.905(a) (2006). If no "severe" impairment is found, the claimant will be found not to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony,

**MEMORANDUM DECISION AND ORDER - 3**

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *Id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id*. at 1095 (citation omitted).

### III.

### DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If the answer is in the

**MEMORANDUM DECISION AND ORDER - 4**

affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity at any time relevant to the underlying inquiry. (AR 14).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). Here, the ALJ found that Petitioner's "status-post decompression/fusion with herniation of L5-S1" is to be considered "severe" under the applicable regulations. (AR 14). Moreover, the ALJ noted that Petitioner's depression and mental impairments are not severe. (AR 14-16).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). In this respect, the ALJ concluded that Petitioner did not have an impairment or combination of impairments that met or medically equaled the criteria established for any of the qualifying impairments. (AR 16).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In this regard, the ALJ concluded that Petitioner has the following residual functional capacity to perform light exertional work: he can lift and/or carry thirty-five (35) pounds occasionally and twenty-five (25) pounds frequently; he can stand and/or walk six (6) hours in an eight (8)-hour workday; he can sit six (6) hours in an eight (8)-hour workday; he can alternate between sitting and standing as needed, but cannot bend, lift, or twist

**MEMORANDUM DECISION AND ORDER - 5**

simultaneously. (AR 16). Finally, the ALJ recognized that, due to Petitioner's physical impairment, Petitioner was unable to perform any of his past relevant work. (AR 19).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). In this respect, the ALJ found that Petitioner has the residual functional capacity to perform a significant range of light/sedentary work found in significant numbers within the national economy, including food and beverage clerk, information clerk, surveillance system monitor, and addresser. (AR 20-21). Therefore, based on Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that he was not under a disability as defined in the Social Security Act at any time through the date of the May 9, 2006 decision. (AR 21).

**B.     Analysis**

Petitioner challenges the ALJ's denial of disability benefits in three separate ways. First, Petitioner argues that the ALJ erroneously rejected the opinion of Dr. Quattrone. (AR 8). In this respect, Petitioner claims that Dr. Quattrone's opinions surrounding his back and mental impairments were dismissed without the requisite "clear and convincing" reasons. (AR 8-14). Second, Petitioner argues that the ALJ improperly rejected her own testimony. (AR 14-15). Third, Petitioner argues that the ALJ's hypothetical questions posed to the vocational expert were in error. (AR 15-17).

**MEMORANDUM DECISION AND ORDER - 6**

1.  The Opinions of Petitioner's Medical Providers Regarding Petitioner's Alleged Severe Physical and/or Mental Impairment

When following the above-referenced sequential process, the ALJ did not lend as much weight to Dr. Quattrone's medical opinion as Petitioner argues he must. The ALJ, it appears, relied instead on the balance of the surrounding medical record, including the opinions of other medical providers, as well as Petitioner's worker's compensation settlement file and the State agency's independent review. This, according to Petitioner, was in error.

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual." *Id*. However, a "treating physician's opinion on the ultimate issue of disability is not necessarily conclusive." *Id*. at 762 (citations omitted). The treating physician's uncontradicted opinion may be disregarded by the ALJ if he sets forth "clear and convincing" reasons. *Id*.; *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is contradicted, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

   a.  *Whether Petitioner Has a Listed Physical Impairment*

There is no question that the ALJ considers Petitioner to have a severe physical impairment. (ALJ 14). However, Petitioner takes issue with the ALJ's apparent dismissal of Dr. Quattrone's medical opinion in favor of the opinions offered by Mitchel A. Woltersdorf, Ph.D. Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 8). Presumably, had the ALJ given the

**MEMORANDUM DECISION AND ORDER - 7**

weight to Dr. Quattrone's opinions as Petitioner argues is necessary, Petitioner would have an impairment (or combination of impairments) that meets or medically equals a listed impairment.

Petitioner appropriately points out that Dr. Quattrone is a treating pain specialist who treated Petitioner from February 2004 through June 28, 2005. Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 8). Because Dr. Quattrone stated that Petitioner's maximum tolerance is for part-time work not exceeding four hours per day (*see* Ex. 16F at AR 398), Petitioner implicitly suggests that anything more is contrary to the advice/opinions of his treating physician. *Id*. However, Dr. Quattrone opined on Petitioner's work-capabilities based only upon "light to medium duty restrictions" (*see* Ex. 16F at AR 398); therefore, it is unclear whether Dr. Quattrone is stating that the four-hour limitation is specific to the referenced exertional level, or if it applies equally to any exertional level.[1] Later, Dr. Quattrone filled out a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" ("Medical Source Statement"). (AR 399-402). Therein, Dr. Quattorne stated, within the context of an eight (8)-hour work day, that Petitioner is "allowed to walk [and] stand as much as he wants" (AR

---

[1] The ALJ raised this rhetorical question during the January 27, 2006 hearing when he stated:

> See, the only problem is she's not assessing whether or not he can do sedentary work full time. I mean, again, it's related to the Workers' Comp limitations. I mean, he's always been released to at least do lifting greater than 35 pounds or 35 or greater. Every single release I referred to, he was being released to light, upper, above light, into the medium realm . . . . So it's difficult to infer from this whether or not he could do less strenuous work on a full-time basis. I mean, she's saying he can work four days, four hours per day, involving lifting greater than – up to 35 pounds occasionally and 20 pounds frequently.

(AR 611).

**MEMORANDUM DECISION AND ORDER - 8**

399); and can climb, balance, kneel, crouch, crawl, and/or stoop occasionally within an eight (8)-hour workday (AR 400).[2]  Thus, it cannot be determined to what extent, if any, Dr. Quattrone limited Petitioner's work capabilities and/or the duration of his workday.

Regardless, the ALJ's impression of Petitioner as a malingerer cannot be emphasized enough.  If true, Petitioner's complaints about the intensity, duration, and limiting effects of his impairment (not to mention his ability to work full-time at all), must be considered in that light.  Here, the ALJ relied upon Dr. Woltersdorf who, in addition to being critical of Petitioner's treating physicians and treatment history, had strong words for Petitioner himself:

> Simply put, Mr. McCollough does not present as a person who is completely disabled and unable to work.  He is working the system to avoid work, obtain drugs, or get disability, or all of the above.  I have severely head injured patients with more problems than Mr. McCollough who work full time in jobs they are capable of handling.  Mr. McCullough is communicative, able to move about, walks without aid, sits for long periods of time (4 hours for this exam), reasons logically, acts socially appropriately, and filled out paper work and tests accurately and without incident.  He needs to go to work of the sort his physical injury, and subsequent medical interventions, can allow; to do otherwise will be a disservice to Mr. McCollough since we will be supporting his attempt to be an invalid, which he is not.  Providers and evaluators just need to stop believing his subjective report of problems as if they were gospel; they are not since he is malingering his concerns.

(AR 421).  In response, Petitioner points to the apparent fact that Dr. Woltersdorf "is frequently employed as an insurance expert witness, rather than a clinical psychologist" and "was hired as an expert witness by a workers' compensation insurance company defending [Petitioner's] workers' compensation claim."  Pet.'s Brief in Supp. of Pet. for Review, p. 11 (Docket No. 8).  Petitioner's argument in this respect is misplaced.

---

[2] According to the Medical Source Statement, "[o]ccasionally means occurring from very little up to one third of an 8-hour workday (cumulative, not continuous)."  (AR 400).

**MEMORANDUM DECISION AND ORDER - 9**

First, while it appears that Dr. Woltersdorf is often employed as an expert witness for the defense, that, by itself, does not operate as a *de facto* challenge to the validity of his opinions. Petitioner offers nothing beyond Dr. Woltersdorf association with Petitioner's workers' compensation carrier; there is no challenge to the accuracy of the tests he performed on Petitioner or the conclusions he reached as a result of those tests. In short, this Court is not in a position to look behind Dr. Woltersdorf's motivations when commenting on Petitioner's condition. Therefore, his opinion must be considered hand-in-hand with that of Petitioner's other treating physicians, including Dr. Quattrone.

Second, Petitioner ignores the fact that Dr. Woltersdorf premised his opinion largely upon the records opinions gleaned from another treating physician - Michael H. McClay, Ph.D. It is Dr. McClay that initially found Petitioner to be a malingerer when, in May 2004, he stated:

> The patient's responses to the validity items of the test suggest that he may have answered it in an exaggerated manner. Further statistical analysis of the protocol suggest that this may be a deliberate attempt on the patient's part to present himself in an overly negative light for some perceived advantage in the evaluation process.
>
> The resulting clinical profile is probably an over-exaggeration of the psychopathology and problems in the patient's life.
>
> The patient's psychological profile suggests the patient may have deliberately magnified psychological symptoms for some perceived advantage in the evaluation process. There appear to be elements of Symptom Magnification Syndrome.

(AR 337 & 338). Although Dr. Woltersdorf repeatedly criticized Dr. McClay's scoring techniques on the various exams employed, he nonetheless acknowledged what Dr. McClay already found - that Petitioner was a malingerer. (AR 418, 420, & 421). If anything, Dr. Woltersdorf's scoring reflects a lower, more conservative finding of Petitioner's malingering

**MEMORANDUM DECISION AND ORDER - 10**

condition. Nevertheless, it is clear to at least two doctors that Petitioner is exaggerating the impact of his physical condition. The ALJ is fully within his authority to consider such opinions, alongside Dr. Quattrone's, when developing his findings.

Simply put, Dr. Quattrone's opinions, even if without ambiguity, are not uncontradicted. Dr. Woltersdorf's and Dr. McClay's separate findings of Petitioner's malingering condition, combined with other evidence in the record of Petitioner's condition and capabilities, including those from the State agency physician and another treating physician, Joseph M. Verska, M.D., combine to reflect the specific and legitimate reasons for supporting the ALJ's decision. While the ALJ's interpretation of the evidence is not the only possible interpretation, it is supported by more than a scintilla of evidence which this Court is not in a position to interfere.

### b.   Whether Petitioner Has a Listed Mental Impairment

In light of Dr. Quattrone's finding that Petitioner suffered from severe depression, Petitioner argues that the ALJ erred in concluding otherwise. Pet.'s Brief in Supp. of Pet. for Review, p. 13 (Docket No. 8). Based upon the record and, at times, the conflicting evidence contained therein, this Court cannot say that the ALJ's conclusion in this respect is not supported by substantial evidence.

Preliminarily, it should be noted that a diagnosis of depression is largely dependent upon a patient's subjective complaints. Here, Petitioner relies upon Dr. Quattrone's February 23, 2004 impression that he suffers from "severe depression." (AR 386). However, this finding was premised upon the "Beck's Depression Questionnaire," a self-administered, twenty-one (21) item, self-report scale measuring supposed manifestations of depression. If a patient's credibility is at issue, the results of the Beck's Depression Questionnaire may logically be affected. As

**MEMORANDUM DECISION AND ORDER - 11**

discussed, the ALJ believed Petitioner to be a malingerer based upon the opinions of Dr. Woltersdorf and Dr. McClay. Logically, therefore, the ALJ considered the results of Petitioner's Beck Depression Inventory to be influenced by Petitioner's self-serving contributions to the questionnaire. (AR 15).[3] As a consequence, the ALJ considered Dr. Quattrone's findings in this respect to be of little assistance.

More importantly, the State agency physician, Maximo J. Callao, Ph.D., acknowledged Petitioner's depression, however found that it does not contribute to any (1) restrictions of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence, or pace, and (4) episodes of decompensation. (AR 350). Dr. Callao continued, stating in no uncertain terms:

> [Patient's] social and cognitive appear intact. He has no psych[ological] [history] and has not sought counseling. On back of app[lication], third party notes [patient] did poorly in some classes in school and [patient] thinks he may be dyslexic. They report that [patient] did not receive special ed services. [Patient] has had long term semiskilled work and does not indicate difficulties performing his work [due to] mental reasons. [Patient] has been released to return

---

[3] The ALJ incorrectly states that, "[b]y July 27, 2004, Dr. Quattrone did not diagno[se] depression and noted that [Petitioner] was awake, alert, and oriented, and his affect was appropriate . . . . Thus, even if the claimant were depressed on February 23, 2004, his depression did not last for at least 12 months at the severe level based on Dr. Quattrone's treatment reports." (AR 15). A review of the record reveals that, on January 4, 2005, Dr. Quattrone noted Petitioner's "history of depression" (AR 373); on January 25, 2005 and February 7, 2005, Dr. Quattrone again highlights Petitioner's "depression" (AR 370 & 371); on March 15, 2005, Dr. Quattrone found Petitioner to be "more depressed and frustrated at this point," again noting Petitioner's "depression" (AR 369). However, a treating physician's opinion may be disregarded if it is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (internal quotation marks omitted)). Here, Dr. Quattrone does not support these findings with consistently objective information. Thus, based upon the surrounding record (findings of no depression and findings of Petitioner's malingering), these limited records do not render the ALJ's decision erroneous.

**MEMORANDUM DECISION AND ORDER - 12**

> to full duty work for some time. Therefore [patient's] learning problem if any is considered nonsevere as is his depression. [Patient's] mental status is considered non-severe.

(AR 352). These findings were later confirmed by Richard A. DuBose, M.D., in June 2004. (AR 323 "[Petitioner's] mood is good and he denies neurovegetative signs of depression."))

Tasked with resolving the contradictions and ambiguities in the record, the ALJ found that Petitioner's "alleged depression is situational and intermittent."[4] This conclusion, while potentially at odds with another's interpretation of the same record, is nonetheless supported by specific and legitimate reasons consistent with evidence in the record. As a result, the ALJ's decision will not be disturbed here.

2.  Petitioner's Credibility

Petitioner also takes issue with the ALJ's conclusion that Petitioner's testimony concerning the intensity, duration, and limiting effects of his symptoms is not credible. The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). However, although the ALJ is responsible for determining Petitioner's credibility, he cannot reject his testimony without giving clear and convincing reasons. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 9th Cir. 1998)). Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

---

[4] This compares favorably to Dr. Quattrone's addendum to her February 23, 2004 treatment notes where she stated: "Also, [patient's] depression appears to be situational, related to his injury. I saw no medical records of previous depression. Given his back's sore, he needs to be treated." (AR 387).

**MEMORANDUM DECISION AND ORDER - 13**

First, as previously discussed, the ALJ considers Petitioner to be a malingerer. *See supra* at pp. 9-11. This position is supported by the findings of both Dr. Woltersdorf and Dr. McClay. *Id*. Because the record contains affirmative evidence that Petitioner was malingering, the ALJ did not need "clear and convincing" reasons to reject Petitioner's testimony about his physical condition. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 14 (Docket No. 8) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) ("The ALJ could . . . reject [claimant's] testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so.")); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing." (Internal citations omitted)).

Second, looking to the medical evidence, the ALJ relied upon the treatment notes of Dr. Verska, one of Petitioner's treating physicians:

- On September 16, 2003, Dr. Verska reported that he found "no contraindications to him going back to work as a truck driver . . . ." (AR 280).

- On November 11, 2003, Dr. Verska stated: "I have recommended a functional capacity evaluation to see what jobs [Petitioner] should be able to go back to. At this time, I have allowed [Petitioner] to go back to full work with a 50-pound weight lifting restriction. [Petitioner] does not feel he can do this." (AR 279).

- On November 25, 2003, Dr. Verska noted: "I think that this gentleman should be able to drive [a] truck. I do not think that he should be able to lift more than 35 to 40 pounds. I have recommended vocational rehab. I find no anatomical reason for his ongoing pain, although I do believe that [t]his gentleman does have pain." (AR 278).

- On December 23, 2003, Dr. Verska reported: "Today I placed him on a Duragesic patch and requested that he return to work following the key function test and possible retraining." (AR 277)

- On January 6, 2004, Dr. Verska stated: "I gave him a 50-pound weight lift restriction with full work." (AR 276)

**MEMORANDUM DECISION AND ORDER - 14**

The point here is that Dr. Verska repeatedly highlighted Petitioner's ability to return to full-time work. Moreover, following Dr. Verska's referral to Dr. Quattrone, on July 1, 2004, Dr. Quattrone commented:

> As far as return to work, I am releasing the patient to work with medium duty restrictions with light to medium duty restrictions with no lifting greater than 35 pounds infrequently and 20 pounds frequently. No bending, twisting and lifting. These are permanent restrictions.

(AR 376). Therefore, the objective medical evidence, offered by Petitioner's own treating physicians, consistently contemplated Petitioner's return to full-time work. Such statements, coupled with Petitioner's apparent malingering, compromise his testimony.

These reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner entirely credible. This is not to say, however, that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations; indeed, Petitioner appropriately identifies conflicting evidence in support of her position.[5] While such conflicting

---

[5] In this regard, Petitioner points to the January 20, 2004 letter from Kathleen Kuhlman and the January 24, 2006 letters from Patty Powell and Marie Forsey, stating: "Generally, these letters corroborate the disability and functional limitations testified to by the Claimant." Pet.'s Brief in Supp. of Pet. for Review, p. 14 (Docket No. 8). As is permissible, however, the ALJ's consideration of these letters was tempered against the objective medical evidence in the record. This approach is consistent with *Bayliss v. Barnhart*, where the Ninth Circuit reasoned:

> An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason. The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.

*Bayliss*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the Court is confident that no reasonable ALJ, when considering the balance of the medical record, could have reached a different

**MEMORANDUM DECISION AND ORDER - 15**

evidence may not have been given the weight Petitioner would have preferred, it is clear that the ALJ's decision to doubt Petitioner's credibility is not without appropriate reasons for doing so. As required by controlling law, the ALJ will not be second-guessed here. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (Internal citations omitted)). Thus, the Court will not substitute its judgment when the evidence in the record can be applied to support the ALJ's findings.

       3.      <u>Hypothetical Questions Posed to the Vocational Expert</u>

An ALJ must propound a hypothetical to a vocational expert that is based upon medical assumptions supported by substantial evidence in the record. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995); *Robbins v. Social Security Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). Petitioner argues that the ALJ posed improper hypothetical questions to the vocational expert because the assumptions were not supported by the record. Pet.'s Brief in Supp. of Pet. for Review, pp. 16 & 17 (Docket No. 8). Namely, Petitioner argues that the ALJ's assumption of Petitioner's ability to work full-time was in error. *Id*.

As previously discussed, much of the record Petitioner cites in favor of his inability to work full-time is a reflection of his subjective complaints made to his treating physicians and

---

disability determination. *See Stout v. Barnhart*, 454 F.3d 1050, 1056 (9th Cir. 2006). Statements made by Petitioner's sister-in-law, neighbor, and family friends, contrasted against the objective medical evidence (Dr. Woltersdorf and Dr. McClay's conclusion that Petitioner is a malingerer, along with the medical records of Petitioner's treating physicians who repeatedly indicated Petitioner's ability to return to work), supports the ALJ's disability determination, thus rendering his handling of these letters, if in error, harmless.

**MEMORANDUM DECISION AND ORDER - 16**

third-party medical providers.  *See supra* at pp. 9-11.  Petitioner, however, was found to be a malingerer by Dr. Woltersdorf and Dr. McClay and, likewise, the ALJ considered such statements self-serving.  Moreover, such statements are inconsistent with (1) Dr. Verska's findings that Petitioner is capable of working full-time (*supra* at p. 14); (2) Dr. Quattrone's July 1, 2004 release without any indication of part-time accommodations (*supra* at p. 15); (3) Dr. Quattrone's most recent Medical Source Statement, contemplating an eight (8)-hour workday with Petitioner being allowed to stand and/or walk "as much as he wants" with "occasional" postural limitations within an eight (8)-hour workday (*supra* at p. 8); and (4) Petitioner's Physical Residual Functional Capacity Assessment, indicating Petitioner's ability to stand, walk, and/or sit in the context of an eight (8)-hour workday (AR 355).  Therefore, the assumptions made by the ALJ when posing hypothetical questions to the vocational expert were supported by the record and, thus, not inappropriate.

Additionally, despite Petitioner's arguments to the contrary, the ALJ did not err in neglecting to incorporate Petitioner's alleged non-exertional limitations based upon his mental impairments.  Pet.'s Brief in Supp. of Pet. for Review, p. 17 (Docket No. 8).  This argument ignores Petitioner's prior, satisfactory work-history.  That is, presumably, Petitioner's mental limitations did not affect his previous semi-skilled positions, let alone his ability to perform the unskilled positions offered by the vocational expert at the January 27, 2006 hearing.  This rationale applies equally to Petitioner's alleged depression which the ALJ found not severe enough to constitute a listed disability in any event (*supra* at p. 11-13).

Based upon the record, the ALJ fashioned hypothetical questions for the vocational expert premised upon Petitioner's age, education, work experience, and residual functional capacity.  In

**MEMORANDUM DECISION AND ORDER - 17**

turn, the vocational expert relayed that, while Petitioner was incapable of performing any past relevant work, he was able to perform a number of jobs existing in significant numbers in the national economy.  This is the very function of both the ALJ and the vocational expert during the mandated sequential process.

## IV.

## CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  In fact, if I had been the finder-of-fact, I may well have reached a different conclusion; but that is not the function of a federal judge reviewing a Social Security determination.

Accordingly, the ALJ's decisions as to Petitioner's disability, credibility, and residual functional capacity to work, were based on proper legal standards and supported by substantial evidence.  Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

**MEMORANDUM DECISION AND ORDER - 18**

**V.**

**ORDER**

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.



DATED: **March 24, 2008**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**